UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re

EAN J. LAVIN,

      Debtor.
_____/

Case No. 8:09-bk-2708-KRM
Chapter 7

**MEMORANDUM OPINION AND ORDER DENYING
THE UNITED STATES TRUSTEE'S MOTION TO DISMISS
CHAPTER 7 CASE PURSUANT TO 11 U.S.C. § 707(b)(3)(B)**

Would the granting of a discharge be an abuse of the provisions of Chapter 7, where the debtor was unemployed on the petition date, but thereafter obtained employment that enabled him, post-petition, to deposit $1,100 per month in a 401k account?  The United States Trustee ("UST") thinks so and seeks dismissal under Section 707(b)(3)(B) of the Bankruptcy Code, because he has the ability to pay at least $668.19 per month to his creditors.[1]

This case is to be decided under the "totality of the circumstances" test of Code Section 707(b)(3)(B).  If the statutory standard is to mean anything, the Court must consider and weigh all of the relevant factors, in addition to the debtor's mathematical ability to pay.  The debtor, only 34 years old, has a serious, life-threatening illness which will prematurely prevent him from working.  Thus, his post-petition 401k contributions are necessary to provide an emergency fund for this anticipated disability.  Moreover, with the addition of Sections 541(b)(7) and 1322(f) to the Code in 2005, the debtor's 401k contributions are not to be considered as "disposable income" that must be paid to creditors in a Chapter 13 plan.  For the reasons stated below, after

---

[1] The debtor's means test calculation, showing no abuse, was made for a period in which the debtor was unemployed.  This Court has previously adopted the "snapshot" view of Section 707(b)(2), in which post-petition changes in the debtor's financial condition are not to be considered in revising the means test to presume that granting a Chapter 7 discharge would be an abuse.  *In re Labruno*, 2009 Bankr. LEXIS 2007; 21 Fla. L. Weekly Fed. B 779 (Bankr. M.D. Fla. 2009).  Accordingly, the UST does not argue for dismissal under Section 707(b)(2).  Nor does the UST argue that the filing was made in bad faith under Section 707(b)(3)(A).

considering the totality of the circumstances of this case, the Court concludes that granting this debtor a Chapter 7 discharge would not be an abuse of the provisions of Chapter 7. Accordingly, the UST's motion will be denied.

## BACKGROUND

Prior to filing this voluntary Chapter 7 petition, the debtor was employed in retail sales for approximately eight years, earning a base salary of $70,000 per year, plus yearly bonuses ranging from $9,000 to $17,000.[2] He put 4% to 10% of his salary in a 401k account which his employer matched up to 4%. Around 2005, the debtor reduced the amount he contributed to the 401k account because he was having difficulty making his mortgage payments. Eventually, he ceased contributions altogether because of his health and related medical expenses. By 2008, the debtor was putting only $125.00 per month in his 401k as a loan repayment.

The debtor lost his job in October 2008. At that time, the debtor had $18,000 in the 401k account, but the loan had been repaid.[3] The debtor used his credit cards to supplement his income. He tried to rent his house out and renegotiate his mortgage, but was unable to achieve a loan modification. He made credit card and mortgage payments through December 2008.

The debtor filed a voluntary Chapter 7 petition on February 17, 2009, while he was still unemployed. The debtor listed secured debts of $317,589.05, including mortgages totaling $300,564.60, secured by his Florida home, which will be surrendered to the first mortgagee. The debtor's unsecured debts were scheduled at $36,067.57, consisting mostly of credit card debt and non-dischargeable student loans.[4]

---

[2] The debtor's highest income was in 2007 and he made approximately $84,000. The debtor lost his bonus for 2008.
[3] The debtor's mother paid off the $3,900 loan.
[4] The debtor has approximately $25,000.00 in credit card debt and approximately $10,000.00 in student loan debt.

Shortly after filing the petition, the debtor obtained new employment in Virginia, earning $70,000 per year. He began contributing $269.23 per week, or $1,100 per month, to his 401k account, which represents approximately 19% of his salary. The employer matches these contributions up to 3%.

Initially, the debtor listed total monthly income of $1,100 in unemployment compensation; the debtor's current pay advices show a net monthly income of $3,138.78. The debtor's post-petition monthly expenses are listed at $3,102.75, including $1,017.59 for rent and $699.97 for medical and dental expenses. He now lives in a rented apartment.

The UST examined the debtor's finances and computed an "adjusted" net monthly income of $4,097.09 and average monthly expenses of $3,428.90.[5] The UST eliminated the debtor's deduction of the 401k contribution and employer matching.[6] Based on its adjustments, the UST argues that the debtor's net monthly income is $668.19. The UST argues that the creditors could receive a 100% distribution in less than 60 months.

## DISCUSSION

Pursuant to the provisions added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), a bankruptcy court may dismiss a Chapter 7 case by an individual with primarily consumer debts, pursuant to Section 707(b), if it determines that the granting of a discharge would be an abuse of Chapter 7.[7] Section 707(b) provides two methods for determining whether "abuse" is present. The first, under Section 707(b)(2), is an objective

---

[5] Including reduction of unities by $95.77 to meet the IRS standard of $399; allowed $450 for food, even though IRS standard is only $277; allowed $88.20 for clothing when IRS standard is $85; increased transportation amount to the IRS standard of $201; reduced recreation and entertainment amount to $70; eliminated $162.39 for student loans.

[6] The UST also increased the debtor's payroll taxes and social security deductions by $208.35 to the maximum tax liability based on standard deduction.

[7] BAPCPA was enacted with the intent to reduce abusive bankruptcy practices and to ensure that debtors with the ability to repay their debts actually do so. The 2005 amendments changed the prior standard for dismissal pursuant to Section 707(b) from "substantial abuse" to merely "abuse."

test as of the petition date, the so-called "means" test, by which "current monthly income," as defined, is reduced by certain allowed expenses, with the net result being viewed through a formula to determine presumed abuse. The second approach, which requires an analysis of the facts of a particular case, is found in Section 707(b)(3). It is said to be a "subjective" test, based on a finding of either "bad faith" or abuse based on the "totality of the circumstances." *In re Parada*, 391 B.R. 492, 496 (Bankr. S.D. Fla. 2008) (citing *In re Henebury*, 361 B.R. 595, 603-04 (Bankr. S.D. Fla. 2007)).

Here, the means test's presumption of abuse is not at issue and nothing in the record reflects bad faith on the part of the debtor. Therefore, the UST seeks dismissal based solely on Section 707(b)(3)(B), which requires examination of the a "totality of the circumstances." The UST has the burden of proof to show that the debtor's financial situation constitutes an abuse. *In re Norwood-Hill*, 403 B.R. 905, 912 (Bankr. M.D. Fla. 2009); *In re Walker*, 383 B.R. 830, 836 (Bankr. N.D. Ga. 2008) ("the U.S. Trustee is required to come forth with the evidence to persuade the Court that relief would be an abuse.").

In pre-BAPCPA cases, courts developed and employed a "totality of the circumstances" test to determine whether to dismiss a case for "substantial abuse" under the former Section 707(b). *In re Meyn*, 330 B.R. 286, 289 (Bankr. M.D. Fla. 2005); *In re Shields*, 322 B.R. 894, 896-97 (Bankr. M.D. Fla. 2005); *In re Luikart*, 319 B.R. 1 (Bankr. M.D. Fla. 2003) (applying "totality of circumstances" test by viewing together the debtor's ability to pay, her economics, and her conduct in failing to accurately disclose income and expenses); *In re Brown*, 301 B.R. 607 (Bankr. M.D. Fla. 2003) (applying the "totality of circumstances" test and granting motion to dismiss); *In re Hall*, 258 B.R. 45, 51 (Bankr. M.D. Fla. 2001) (considering not only the debtor's ability to pay, but the totality of the circumstances, to dismiss Chapter 7 case).

Because Congress retained the phrase "totality of the circumstances" in Section 707(b)(3), courts have looked to pre-BAPCPA case law to determine its meaning. Courts have employed a variety of factors in this approach which were considered by courts in pre-BAPCPA cases. *In re Norwood-Hill*, 403 B.R. at 912 (citing *In re Cribbs*, 387 B.R. 324, 333 (Bankr. S.D. Ga. 2008)). It is also understood that post-petition events are relevant, so that the court can examine changes in a debtor's pre-discharge financial situation in reaching its decision. *In re Dowleyne*, 400 B.R. 840, 846 (Bankr. M.D. Fla. 2008).

The primary factor is the debtor's ability to repay a portion of his or her debts from future income. *In re Norwood-Hill*, 403 B.R. at 912. Other factors are considered as either exacerbating or mitigating the apparent abuse from the debtor's ability to repay. These factors include: (1) whether unforeseen or catastrophic events pushed the debtor into bankruptcy; (2) whether the debtor's standard of living substantially improved or remained essentially the same as a consequence of the bankruptcy filing; (3) the debtor's age, health, dependents, time until retirement, and other family responsibilities; (4) whether the debtor is eligible for Chapter 13 relief and whether the creditors under a Chapter 13 case would receive a meaningful distribution; (5) the age of the debts for which the debtor seeks a discharge and the period over which they were incurred; (6) whether the debtor incurred cash advances and made consumer purchases far in excess of the ability to repay; (7) whether the debtor attempted to negotiate with the creditors or made any payments toward the debts; (8) the accuracy of the debtor's schedules and statement of current income and expenses; and (9) whether the debtor filed the petition in good faith. *Id.* at 912-13.

In the absence of controlling Eleventh Circuit authority, the UST urges the Court to dismiss the case because it appears that the debtor has the ability to pay 100% of his debt in less

than 60 months. Congress could have required dismissal based solely on a debtor's "ability to pay." Instead, Section 707(b)(3)(B) requires evaluation of the "totality of the circumstances." Thus, the UST must show something more than just the debtor's mathematical ability to pay. *See e.g. In re Norwood-Hill*, 403 B.R. 905; *In re Garrett*, No. 07-3997, 2008 Bankr. LEXIS 4130 (Bankr. M.D. Fla. 2008); *In re Skvorecz*, 369 B.R. 638 (D. Colo. 2007); *In re Latone*, No. 08-03311, 2008 Bankr. LEXIS 3206 (Bankr. D. Ariz. 2008).

Looking at all the relevant factors, the Court finds that the debtor was propelled into bankruptcy by unforeseen and catastrophic events. First, he lost his bonus and, eventually, his job. He was unable to pay his mortgage. He tried to pay his mortgage and other debts until shortly before filing. The debtor's standard of living has not improved as a result of the filing. Arguably, his standard of living has declined somewhat, since he has surrendered his home and is now renting an apartment. Significantly, although the debtor is only 34 years old, he has a serious medical condition that will limit his working life. The net income identified by the UST is not supporting extravagant living, but is being put away for the debtor's anticipated future disability.

There is nothing in the record to indicate the debtor filed with the purpose of gaming the system at his creditors' expense. The age of the debts and the period over with they were incurred show that the debtor did not go on a spending spree just prior to filing this bankruptcy case. The debtor did not make purchases far in excess of his ability to repay. Most of his debts were incurred prior to the loss of his job in 2008, at a time when he had the financial means to pay them.[8] The debtor tried to renegotiate with his mortgage debt without success. He was

---

[8] The age of the debts and period over which they were incurred in addition to whether the debtor made purchases far in excess of his ability to pay are the aggravating factors in the totality of the circumstances analysis. They are not present in this case.

current on payments through December 2008, even though he still remained unemployed. Nothing in the record supports a finding that the debtor has failed to disclose material information in his schedules or statements of current income and expenses.

In *In re Norwood-Hill,* the court reasoned that a debtor's ability to pay creditors is a primary, but not conclusive factor and that the "mere mathematical ability to fund a Chapter 13 plan if contributions or loan repayments to a retirement account are not made is alone insufficient to find an abuse of the provisions of Chapter 7." *In re Norwood-Hill*, 403 B.R. at 913-14 (citing *In re Tucker*, 389 B.R. 535, 540 (Bankr. N.D. Ohio 2008)). In that case, the debtor, a 49 year old single mother, was forced into bankruptcy by unforeseen circumstances including the breakup of her marriage and relocation from Georgia to Florida to maintain her job. The debtor had $40,000.00 in a Thrift Savings Plan/401k ("TSP") and she deducted approximately $500.00 relating to TSP contributions and loan repayments from her total monthly income. The court held that such contributions and repayments to the debtor's TSP would not be considered as disposable income in funding a Chapter 13 plan; therefore, the creditors would not receive a meaningful distribution in a Chapter 13 case. The court did not find abuse and found the debtor was entitled to a "fresh start." I find this reasoning persuasive.

Although the debtor in this case is eligible for Chapter 13 relief, his creditors may not receive a meaningful distribution if this case was converted to Chapter 13. With the addition of Sections 541(b)(7) and 1322(f), Congress has placed retirement plans, including contributions to a 401k account, outside the realm of a Chapter 13 plan. *In re Norwood-Hill, 403 B.R. at 913; In re Garrett*, 2008 Bankr. LEXIS 4130, *3 (citing *In re Johnson*, 346 B.R. 256, 263 (Bankr. S.D. Ga. 2006)). Such contributions do not constitute disposable income as defined in Section

1325(b)(2).  *See In re Garrett*, 2008 Bankr. LEXIS 4130; *In re Skvorecz*, 369 B.R. at 642; *In re Latone*, 2008 Bankr. LEXIS 3206.

If this debtor was forced into a Chapter 13, his 401k contributions would not be included in his disposable income.  Because the 401k contributions form the only basis of the debtor's ability to repay creditors, and because the contributions would not be included as disposable income in a Chapter 13, the debtor would not have the ability to pay a substantial amount to creditors in a Chapter 13 plan.

The purpose of dismissal under Section 707(b) is for the debtor to pay creditors if he has the means to do so; but it would be "nonsensical" to find abuse where the very payments used to calculate the debtor's ability to repay are the same payments that are not included as disposable income under a Chapter 13 plan.  This would lead to an absurd result of zero distribution.  *In re Skvorecz*, 369 B.R. at 643-44.  Courts have the discretion to deny a dismissal under such circumstances, especially where it appears that the debtor has no other unreasonable or extravagant expenses.  *In re Latone*, 2008 Bankr. LEXIS 3206.  The ability to pay must be a reality for the filing of a Chapter 7 to be found abusive.  In this case, it is clear that the debtor's 401k contributions would not be included in a Chapter 13 and his creditors would not receive a meaningful distribution.

The debtor's medical condition is the principal mitigating factor.  He contributes $1,100 per month to his 401k for future medical emergency purposes.  It appears that the debtor's condition will prematurely end his ability to work.  The unique circumstances presented in this case compel this Court to weigh heavily these mitigating factors and hold in favor of the debtor.

## CONCLUSION

The Court concludes that the debtor's Chapter 7 filing was not abusive based on the totality of the circumstances. While this debtor obtained a job, post-petition, that would enable him to pay a portion, if not all, of his debts, there is no additional aggravating factor. If the "totality of the circumstances" test is to mean anything, it is that the debtor's mathematical ability to pay be weighed against all the other factors. In this case, the debtor's medical condition will prevent him from working prematurely and his standard of living remains modest. The unique circumstances in this case compel this Court to deny the UST's Motion to Dismiss.

Accordingly, it is

**ORDERED:**

Consistent with the Order entered on December 18, 2009 (Document No. 33), the *United States Trustee's Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. § 707(b)(1) and (b)(2), or in the Alternative Pursuant to 11 U.S.C. 707(b)(3)(B)* (Document No. 17) is DENIED.

DONE and ORDERED in Chambers at Tampa, Florida on <u>January 19, 2010</u>.

K. Rodney May
United States Bankruptcy Judge